Policastro did not present evidence sufficient to create a genuine issue of material fact regarding the inadequacy of her budget or NWA's alleged failure to relocate her, conditions which might support a claim that the reassignment was objectively intolerable.  First, NWA always reimbursed her for her costs, even when she went over budget, and she was never disciplined for failing to stay within her budget. Second, the record clearly indicates that Policastro made it known to her supervisors that she did not wish to relocate. There cannot be a denial of a relocation package in a situation where she did not desire to relocate and her supervisors were aware of this fact.

We therefore conclude that the reassignment of Policastro did not constitute a constructive discharge or an adverse employment action.  A reasonable person would not find these conditions objectively intolerable, and we are not persuaded by Policastro's subjective displeasure over NWA's business restructuring decision.  Policastro cannot demonstrate constructive discharge by showing that a different restructuring plan would have benefitted or been more acceptable to her.

Because we find that Policastro did not present evidence from which a jury could find that she suffered an adverse employment action, we conclude that she failed to establish a prima facie case of sex or age discrimination.  Policastro's failure to establish a prima facie case precludes us from reaching the questions of whether NWA had a legitimate, non-discriminatory reason for the reassignment and whether that reason was actually a pretext.  And because her state law claims are subject to the same analysis we have utilized above, *Mitchell*, 964 F.2d at 582, those claims must fail as well.

### CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the district court.

RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION:  2002 FED App. 0254P (6th Cir.)
File Name:  02a0254p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

BARBARA POLICASTRO,
    *Plaintiff-Appellant,*

    *v.*                                    No. 00-4484

NORTHWEST AIRLINES,
INCORPORATED,
    *Defendant-Appellee.*

Appeal from the United States District Court
for the Southern District of Ohio at Cincinnati.
No. 98-00066—Herman J. Weber, District Judge.

Argued:  January 30, 2002

Decided and Filed:  July 29, 2002

Before:  SUHRHEINRICH, SILER, and BATCHELDER,
Circuit Judges.

_____

### COUNSEL

**ARGUED:**  Donald B. Hordes, SCHWARTZ, MANES & RUBY, Cincinnati, Ohio, for Appellant. David G. Holcombe, BAKER & HOSTETLER, Cincinnati, Ohio, for Appellee. **ON BRIEF:**  Donald B. Hordes, SCHWARTZ, MANES & RUBY, Cincinnati, Ohio, for Appellant. David G. Holcombe,

Amy L. Garrard, BAKER & HOSTETLER, Cincinnati, Ohio, for Appellee.

————————————

**OPINION**

————————————

ALICE M. BATCHELDER, Circuit Judge.    Barbara Policastro appeals the district court's grant of summary judgment in favor of her employer, Northwest Airlines, Incorporated ("NWA"), on her claims of sex discrimination in violation of Title VII, 42 U.S.C. § 2000e *et seq.*; age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*; constructive discharge under both Title VII and the ADEA; and violations of state sex and age discrimination laws.  We conclude that the plaintiff failed to establish a prima facie case of either age or sex discrimination because she did not demonstrate that she suffered an adverse employment action. Accordingly, we affirm the decision of the district court.

## PROCEDURAL HISTORY

On January 21, 1998, the plaintiff, Barbara Policastro, filed a complaint against NWA alleging six claims: sex discrimination under Title VII, age discrimination under the ADEA, constructive discharge under both Title VII and the ADEA, and state law claims of age and sex discrimination. Following discovery, NWA moved for summary judgment.

The district court granted NWA's motion, concluding that Policastro failed to establish a prima facie case of sex or age discrimination because she did not demonstrate that she had suffered an adverse employment action.  The district court went on to conclude that Policastro had also failed to present evidence of pretext or direct evidence of discrimination. Because we agree that Policastro did not suffer an adverse employment action and thus did not establish a prima facie case of discrimination, we will affirm without reaching the other issues.

An adverse employment action is a "materially adverse change in the terms or conditions of . . . employment because of [the] employer's conduct." *Kocsis v. Multi-Care Mgmt., Inc.*, 97 F.3d 876, 885 (6th Cir. 1996) (emphasis omitted). Reassignments without changes in salary, benefits, title, or work hours usually do not constitute adverse employment actions. *Id.* at 885, 886; *Yates v. Avco Corp.*, 819 F.2d 630, 638 (6th Cir. 1987).  When a reassignment rises to the level of a constructive discharge, however, the reassignment is an adverse employment action.  For a transfer or reassignment to amount to a constructive discharge, its conditions must be objectively intolerable to a reasonable person.  *Kocsis*, 97 F.3d at 886 (discussing *Darnell v. Campbell County Fiscal Court*, No. 90-5453, 1991 WL 11255, at *3 (6th Cir. Feb. 1, 1991)).  An employee's subjective impressions as to the desirability of one position over another are not relevant.  *Id.* (citing *Kelleher v. Flawn*, 761 F.2d 1079, 1086 (5th Cir. 1985)).  We note that increased distance from home to a new position is a factor in determining whether a constructive discharge has occurred. *Id.*; *accord Darnell*, 1991 WL 11255, at *3.

Since 1994, Policastro's territory has included the Louisville/Lexington metropolitan areas; prior to the reassignment at issue here, she spent thirty to forty percent of her time in these markets, and occasionally stayed overnight in Kentucky in conjunction with client meetings.   The reassignment did not involve a reduction in salary, a decrease in benefits, a diminution in responsibilities, a modification of her title, or an increase in the size of her territory, and it was expected to advance her career.  The only aspect of her job that changed was that she was required to spend her time solely in Kentucky rather than splitting her time with the Cincinnati market.  The distance Policastro had to travel did not increase, although the number of times per month that she had to travel that distance did.  Moreover, she had the option of spending the night if she found the daily drive inconvenient.

## ANALYSIS

As a threshold matter, we recognize that claims of discrimination brought pursuant to Title VII, 42 U.S.C. § 2000e *et seq.*, and the ADEA, 29 U.S.C. § 621 *et seq.*, are analyzed under the same framework. *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992). We follow the *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) burden-shifting analysis, which requires a plaintiff first to establish a prima facie case of discrimination. *Id.* at 802. To establish a prima facie case, a plaintiff must show (1) "that [s]he is a member of a protected group," (2) "that [s]he was subject to an adverse employment decision," (3) "the [s]he was qualified for the position," and (4) "that [s]he was replaced by a person outside of the protected class." *Kline v. Tennessee Valley Auth.*, 128 F.3d 337, 349 (6th Cir. 1997) (citing *Mitchell*, 964 F.2d at 582). In disparate treatment cases, the fourth element may be replaced with the requirement that the plaintiff show she was treated differently from similarly-situated individuals. *Mitchell*, 964 F.2d at 582-83.

We agree with the district court's finding that Policastro established the first and third prongs of her prima facie case—she is female, and she was over the age of forty, as required by 29 U.S.C. § 631(a), and there is no question that she was qualified for the position. We also agree, however, with the district court's finding that Policastro failed to present evidence sufficient to establish the third prong; that is, she did not demonstrate that she suffered an adverse employment action.[1]

---

[1] Policastro claims that she has direct evidence sufficient to support her claims of both age and sex discrimination. We need not reach the questionable affidavit she proffers in support of this claim because whether she proceeds on the basis of direct evidence or circumstantial evidence, she must demonstrate an adverse employment action, *Nguyen v. City of Cleveland*, 229 F.3d 559, 562 (6th Cir. 2000), which, as we explain, she has failed to do.

## STATEMENT OF FACTS

Policastro began her employment with NWA as a Reservation Agent in 1975. In 1978, she was promoted to the position of Sales Representative, where she sold NWA's services to travel agencies and corporations whose employees traveled on business. She remained employed in this capacity until her resignation in 1996.

From 1983 until 1993, Policastro's sales territory comprised the entire Cincinnati metropolitan area, but in 1994, NWA added to her territory the Louisville/Lexington metropolitan areas, which are one hundred miles and eighty miles, respectively, from Policastro's home in Cincinnati. Policastro was physically present in the new territory an average of four to six days per month, occasionally staying overnight in Kentucky, and thirty to forty percent of her selling time was devoted to the Louisville/Lexington markets.

In 1994, NWA, which was strong in domestic and transpacific travel, formed a strategic alliance with KLM Airlines, Inc., an airline strong in transatlantic travel, to unite the sales and marketing contingents of both airlines. The two airlines restructured and reallocated their sales forces in the Detroit region, which includes Indiana, Columbus and Cincinnati, Ohio, and Louisville and Lexington, Kentucky. Various cities in the region were classified as either "focus" or "opportunity" cities. Focus cities, such as Columbus and Indianapolis, were cities presenting significant opportunities to increase the two airlines' market share because no other airline dominated. Opportunity cities, such as Louisville, were cities in which the two airlines had under-performed in the past, but presented the potential for increasing revenues. Cincinnati was not classified as an opportunity city because of Delta Airlines' dominance. NWA's strategy was to increase the international flights in Cincinnati and domestic flights in the Louisville/Lexington area.

As part of these structural changes and effective in October of 1995, NWA and KLM officials reconfigured Policastro's territory so that she would service customers exclusively in

the Louisville/Lexington metropolitan areas. The change took into account the facts that she was experienced in domestic and transpacific sales and would not need training; she already spent thirty to forty percent of her time in the Louisville/Lexington region; she had a strong contact base in the region; her largest account was in Louisville; she was better suited for the challenge of an opportunity city; and the new territory had the potential for helping her career. Policastro was expected to spend at least four days per week (and three nights, if she chose to stay overnight) in Louisville and Lexington, but she was not required to—and in fact did not—relocate. Policastro's territory did not increase, and her salary, benefits, responsibilities, and job title did not change.

Policastro was unhappy with the reassignment because she would have a long commute, she would be required to be in Louisville and Lexington four days per week, and it would deprive her of her ability to maintain her longstanding relationships with her Cincinnati clientele. But contrary to her later assertion that she was denied a relocation package, when the possibility of reassignment was first discussed, Policastro in fact informed NWA officials that she was unwilling to relocate.

Policastro's Cincinnati region was reassigned to KLM employee Miro Macholda, who, prior to the reassignment, had sold KLM services exclusively in the Columbus, Cincinnati, Dayton, and Louisville areas. NWA assigned this territory to Macholda because he had extensive experience in transatlantic sales but no experience in domestic or transpacific sales, for which he would need to be trained, and he had spent less than five percent of his time in the Louisville/Lexington area and did not have a strong contact base there.

In October 1995, Policastro began servicing the Louisville/Lexington metropolitan areas exclusively four days per week, and she quickly generated a number of accounts in the Louisville/Lexington markets. She almost immediately expressed concern that her budget was inadequate, despite the

facts that she was reimbursed for the expenses she submitted, even those over budget, and she was not disciplined for going over budget.

Policastro serviced the Louisville and Lexington markets exclusively until she submitted her resignation on June 28, 1996, at the age of forty-five, citing her territory modification and travel/expense budget concerns as reasons for her resignation. She maintained that the stress on herself and her family was too much for her to handle.

## STANDARD OF REVIEW

We review a district court's grant of summary judgment de novo, using the same standard under Rule 56(c) used by the district court. *Williams v. Mehra*, 186 F.3d 685, 689 (6th Cir. 1999) (en banc). Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). We view the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). To withstand summary judgment, the non-movant must present sufficient evidence to create a genuine issue of material fact. *Klepper v. First Am. Bank*, 916 F.2d 337, 342 (6th Cir. 1990). A mere scintilla of evidence is insufficient; "there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).