George RUSHTON, Plaintiff–Appellant,

v.

CITY OF WARREN and Dennis DeVooght, Lt., Defendants–Appellees.

No. 02–1536.

United States Court of Appeals, Sixth Circuit.

Feb. 19, 2004.

Jamil Akhtar, Akhtar, Sucher & Ebel, Troy, MI, for Plaintiff–Appellant.

Kenneth M. Gonko, The Danielson Group, Chesterfield, MI, for Defendants–Appellees.

Before RYAN, MOORE, and ROGERS, Circuit Judges.

ROGERS, Circuit Judge.

George Rushton, plaintiff/appellant, appeals the district court's grant of summary judgment in favor of the City of Warren (the "City") and Dennis DeVooght. defendants/appellees, as well as the district court's denial of Rushton's motion for leave to amend his complaint. Rushton, a former Warren police officer, charges the City and DeVooght. Rushton's former commanding officer, with age discrimination. Specifically, Rushton claims that DeVooght transferred him from a regular patrol position to an "extra" position because of his age. In his original complaint, Rushton asserted claims under the Age Discrimination in Employment Act, 29 U.S.C.A. § 621 et seq. (1999), (the "ADEA") and Michigan's Elliott–Larsen Civil Rights Act, Mich. Comp. Laws Ann. § 37.2101 et seq. (2003), (the "Elliott–Larsen Act"). Later, he moved the district court for leave to amend his complaint to add a procedural due process claim under 42 U.S.C. § 1983.

The district court denied Rushton's motion for leave to amend on the ground that Rushton had not stated a viable due process claim. The district court granted the defendants' motion for summary judgment on Rushton's ADEA and Elliott–Larsen Act claims on the ground that the transfer did not constitute "an adverse employment action"—a prerequisite for relief under either statute.

Rushton has not created a genuine issue of material fact as to whether the transfer constituted an adverse employment action, and he failed to designate the district court's order denying his motion for leave to amend in his notice of appeal, as required by Federal Rule of Appellate Procedure 3(c)(1)(B). Therefore, we affirm the judgment of the district court.

## BACKGROUND

Rushton worked as a police officer for the City from January 20, 1975 until July 23, 2000. During most of his tenure, he served as a patrol officer. However, he volunteered for permanent duty at the lock-up area twice during his career (from November 1979 to the spring of 1981 and from the fall of 1986 to April 1989).

The duties of a patrol officer include both road patrol as well as inside station duties such as court officer, property room officer, and jail officer. Officers are assigned to a patrol area on a monthly basis. An officer on road patrol is assigned to one of eight designated patrol areas—identified by the letters "A" through "H"—within the City, or to the "extra" position. An officer serving as an "extra" either covers one of the eight patrol areas or performs inside duty. Officers assigned to specific areas are often moved to other areas or to inside duty on an as-needed basis. Officers receive the same salary and benefits regardless of their patrol area and regardless of whether they are assigned to a specific area or to the "extra" position.

The parties differ on the procedure for the assignment of officers. According to Rushton. "[t]he basic custom or established practice was to allow officers to choose their patrol areas based upon seniority." Conversely, according to the defendants, officers do not bid on the areas where they will patrol; rather, the commanding officer makes assignments based

primarily on scheduling needs and officer productivity. The defendants maintain that management possesses the contractual right to make assignments and that it regularly exercised this right by rotating officers among the patrol areas (*e.g.,* moving an officer scheduled for Area A to Area B to cover for a sick or vacationing colleague).

The parties also differ on the nature of the "extra" position. Rushton characterizes the extra as a "gopher" and maintains that only "rookies" were assigned to the position. Conversely, the defendants contend that various officers have filled the position, including senior officers.

On February 25, 2000, DeVooght became shift commander for Rushton's shift. Upon assuming command. DeVooght implemented a plan to improve the performance of his officers. He established performance criteria, prepared a written summary of his expectations and the officers' responsibilities, and informed the officers that failure to comply with performance directives would result in removal from their assigned areas regardless of their seniority. In the course of evaluating his officers, DeVooght determined that Rushton's performance was "substandard."

On March 18, 2000, DeVooght met with Rushton and informed him that he was being reassigned from Area D to the "extra" position. According to Rushton, DeVooght stated that Rushton "was getting older" and "was slowing down." DeVooght further stated that "in his opinion. [Rushton] was cruising," and that "he needed somebody more aggressive working the area." DeVooght denies making these statements; instead, he claims that he merely critiqued Rushton's performance and told him that he would return Rushton to Area D if his performance improved.

After leaving DeVooght's office, Rushton ran into Philip Coraci, a fellow officer and an official in the Warren Police Officers Association. According to Coraci, Rushton was "visibly upset" and told Coraci "that he was being removed from his area because lieutenant [sic] wanted to put a younger guy down there." However, Rushton declined to file a grievance, lamenting that "his spirit was gone." Nevertheless, Coraci approached DeVooght about the incident. DeVooght told Coraci that "George was getting older" and that "he wanted a younger guy to go down there to be more aggressive."

In June 2000, Rushton submitted his retirement application. Rushton claims that he decided to retire because of the "humiliation" and "embarrassment" engendered by the transfer. Specifically, he claims

> basically everybody in the department knew that I worked [in Area D] and had done so for many years, and when I was removed from that area. I was humiliated, embarrassed, there was no pride left, everything was gone.

The defendants assert that Rushton had discussed retirement with his colleagues for several years up to that time.

On July 6, 2000, prior to his retirement date, Rushton encountered Police Commissioner Louis J. Nardi. When Nardi congratulated him on his retirement, Rushton indicated that he had decided to retire because he was unhappy with the transfer. Nardi replied that Rushton "shouldn't go away from here feeling bad," and he suggested that they meet with Chief James P. Vohs to discuss the situation.

Later that day, Rushton met with Nardi and Vohs at Nardi's office. Rushton related his version of the May 18 meeting and stated that he was retiring because of his embarrassment at the transfer. Vohs asked Rushton to rescind his retirement

application so that they could discuss the issue with DeVooght when he returned from vacation. Rushton agreed and withdrew his application after the meeting. However, days later, before the meeting with DeVooght and Vohs, Rushton resubmitted his retirement application

On June 14, 2001, after receiving a 90–day "Right to Sue" letter from the Equal Employment Opportunity Commission, Rushton filed a complaint against the City. In his complaint, Rushton alleged that the transfer constituted prohibited age discrimination under the ADEA and the Elliott–Larson Act. On January 31, 2002, Rushton filed a motion to amend his complaint to add DeVooght as a defendant and to allege a violation of the Due Process Clause of the Fourteenth Amendment under 42 U.S.C. § 1983.

On March 11, 2002, at the hearing on Rushton's motion, the district court granted Rushton's motion to add DeVooght as a defendant. However, it denied Rushton's motion to add a procedural due process claim, reasoning that Rushton's amended complaint did not state a valid claim. It explained that "to dignify a transfer of assignment which apparently did not even violate a union contract—to make that a due process claim is to trivialize our Constitition."

On April 1, 2002, following a hearing, the district court granted the defendants' motion for summary judgment. The court ruled that Rushton had not shown that the reassignment from Area D to the "extra" position was an adverse employment action, and also ruled that the transfer was not a constructive discharge as "[n]o reasonable person would have felt constrained to quit his job because of [the transfer]."

On April 1, 2002, the district court entered separate orders denying Rushton's motion for leave to amend and granting the defendants' motion for summary judgment. On April 19, 2002. Rushton filed a timely notice of appeal of the order granting defendants' motion for summary judgment.

## ANALYSIS

### 1. ADEA Claim

■ The district court properly granted summary judgment in favor of the defendants, as Rushton has not created a genuine issue of material fact as to whether his transfer from Area D to the extra position constituted an adverse employment action.

This court reviews a district court's grant of summary judgment *de novo*. *Williams v. Gen'l Motors Corp.*, 187 F.3d 553, 560 (6th Cir.1999). The evidence should be viewed in the light most favorable to the non-moving party, and summary judgment should be granted only when there is no genuine issue of material fact. *Id.*

The ADEA "broadly prohibits arbitrary discrimination in the workplace based on age." *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 120, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985) (internal quotation omitted). "A plaintiff who brings a claim under [the ADEA] must prove that age was a determining factor in the adverse action that the employer took against him or her." *Phelps v. Yale Sec., Inc.*, 986 F.2d 1020, 1023 (6th Cir.1993) (citation omitted). A plaintiff may use direct evidence or circumstantial evidence to make this showing. *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1081 (6th Cir.1994).

A plaintiff can establish a *prima facie* case "by presenting credible, direct evidence of discriminatory intent." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 n. 4 (6th Cir.1992). Direct evidence is "that evidence, which if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Wexler v. White's Fine Furni-*

*ture, Inc.*, 317 F.3d 564, 570 (6th Cir.2003) (en banc) (internal quotation omitted). Once the plaintiff has shown that the decision was made at least in part on a discriminatory basis, the burden shifts to the employer to prove by a preponderance of the evidence that it would have taken the same adverse action even if impermissible factors had not entered into its decision. *Id.* (citing *Price Waterhouse v. Hopkins*, 490 U.S. 228, 258, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989)). An "isolated," "ambiguous," or "abstract" remark cannot serve as direct evidence of age discrimination. *Phelps*, 986 F.2d at 1025–26.

A plaintiff can also rely on circumstantial evidence under the *McDonnell Douglas* framework. First, a plaintiff must establish a *prima facie* case of discrimination by introducing evidence sufficient to support a finding that (1) the plaintiff was at least 40 years of age at the time of the alleged discrimination, (2) the plaintiff suffered an adverse employment action, (3) the plaintiff was qualified for the position, and (4) the plaintiff was replaced by a younger person. *Cooley v. Carmike Cinemas, Inc.*, 25 F.3d 1325, 1329 (6th Cir. 1994). Next, if the plaintiff has established a *prima facie* case, the burden shifts to the employer "to articulate some legitimate, nondiscriminatory reason" for its action. *LaPointe v. United Autoworkers Local 600*, 8 F.3d 376, 379 (6th Cir.1993) (quoting *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)). "Once the employer carries this burden, the burden shifts back to the plaintiff to prove by a preponderance of the evidence that the legitimate reasons offered by the employer were not its true reasons, but were a pretext for discrimination." *Id.* (internal quotation omitted).

Importantly, whether proceeding by direct or circumstantial evidence, an ADEA plaintiff must demonstrate that he suffered "an adverse employment action." *Policastro v. Northwest Airlines, Inc.*, 297 F.3d 535, 539 n. 1 (6th Cir.2002).[1] "An adverse employment action is a materially adverse change in the terms or conditions of employment because of the employer's conduct." *Id.* at 539 (internal quotation omitted). "To be materially adverse, a change in working conditions must be more disruptive than a mere inconvenience or an alteration of job responsibilities." *Galabya v. New York City Bd. of Educ.*, 202 F.3d 636, 640 (2nd Cir.2000) (internal quotation omitted). Examples of a materially adverse employment decision include a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation. *Id; Hollins v. Atl. Co., Inc.*, 188 F.3d 652, 662 (6th Cir.1999).

"Reassignments without changes in salary, benefits, title, or work hours usually do not constitute adverse employment actions." *Policastro*, 297 F.3d at 539. "When a reassignment rises to the level of

---

1. Rushton argues that an ADEA plaintiff is not required to show that he suffered an adverse employment action if he presents direct evidence of age discrimination. Appellant's Br. at 17, 19, 23. This assertion is unfounded. *See Policastro v. Northwest Airlines, Inc.*, 297 F.3d 535, 539 n. 1 (6th Cir.2002) (stating that "whether she proceeds on the basis of direct evidence or circumstantial evidence, she must demonstrate an adverse employment action" (citation omitted)); *Antonucci v.* *Goodyear Tire & Rubber Co.*, No. 93–3135, 1994 WL 49569, at *3 (6th Cir. Feb. 17, 1994) ("Regardless of whether a plaintiff seeks to make a *prima facie* case under *McDonnell Douglas*, or proceeds on the basis of direct evidence of age discrimination, he must show at least that there remains a genuine issue as to the adverse employment action which he claims as the injury in his suit." (internal quotation omitted)).

a constructive discharge, however, the reassignment is an adverse employment action." *Id.* A reassignment does not amount to a constructive discharge "unless the proffered employment options would have been so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign." *Wilson v. Firestone Tire & Rubber,* 932 F.2d 510, 515 (6th Cir.1991) (internal quotation omitted); *see also Policastro,* 297 F.3d at 539 (holding that for a transfer to amount to a constructive discharge "its conditions must be objectively intolerable to a reasonable person"). "An employee's subjective impressions as to the desirability of one position over another are not relevant." *Policastro,* 297 F.3d at 539.

Rushton argues that his reassignment to the "extra" position amounted to a constructive discharge. He claims that he was deprived of his right, enshrined by departmental practice, to choose his assigned area. He further claims that the extra position was a "gopher" position traditionally assigned to rookie officers and that, at this position, he was forced to deliver mail to city offices and to pick up prescriptions for inmates. In sum, he maintains that the transfer "was intolerable to him as it was demeaning to a seasoned officer with many, many years of service," and it ultimately resulted "in [his] humiliation, depression, and eventual choice to retire earlier than originally anticipated."

The district court properly concluded that Rushton has not created a genuine issue of material fact as to whether he was constructively discharged. The transfer did not produce a change in Rushton's salary, fringe benefits, or schedule. Rushton's daily responsibilities did not change significantly; Rushton split his time between inside duty and road patrol both before and after the transfer, though after the transfer Rushton rotated between Areas A through D instead of patrolling only Area D. As Rushton testified. "[b]asically what changed was where [he] would actually work."

Moreover, though commanding officers apparently accommodated the preferences of senior officers when possible, the evidence does not support the conclusion that senior officers had any "right" to select their positions. Finally, the transfer was not permanent. *See Bowman v. Shawnee State Univ.,* 220 F.3d 456, 462 (6th Cir. 2000) (holding that "cases where the employment action, while perhaps being materially adverse if permanent, is very temporary also do not constitute materially adverse employment actions"). At the May 18 meeting, DeVooght informed Rushton that he could return to Area D if his performance improved, and the Police Commissioner—who had the authority to reverse DeVooght's decision—set up a meeting with DeVooght and Rushton to discuss the situation.

Admittedly, a transfer "involving loss of prestige or an objectively demeaning change of working conditions" can amount to a constructive discharge. *Darnell v. Campbell County Fiscal Court,* 731 F.Supp. 1309, 1313 (E.D.Ky.1990). However, the record is barren of evidence supporting Rushton's charges the extra position was "a gopher job" and that the position was demeaning for an experienced officer.[2] Thus, his construc-

---

2. In his brief and his oral argument. Rushton mustered only a citation to his counsel's oral argument before the district court. Obviously, this is not sufficient to create a triable issue of fact.

   In its review of the record, the court has found a piece of evidence that arguably supports Rushton's argument that the extra position was objectively intolerable. Apparently, on July 17, 2000, after Rushton agreed to withdraw his retirement papers, Rushton had a conversation with another officer who "laughed" at Rushton and said "at least he still had his area." J.A. at 123. However,

tive discharge claim rests on his subjective impression that he was placed in a "humiliating" position, and it therefore fails. *See Wilson,* 932 F.2d at 515 ("When an employee alleges that he was forced to resign, the employee's perception must be judged objectively without consideration of his undue sensibilities.").

### 2. Elliott–Larsen Act Claim

 For the same reasons, the district court properly granted summary judgment in favor of the defendants on Rushton's Elliott–Larsen Act claim. The parties claim that federal precedent controls the application of the Elliott–Larsen Act. *See* Appellant's Br. at 25, 45: Appellees' Br. at 40. Actually, federal civil rights cases are persuasive rather than controlling authority. *Bryant v. Automatic Data Processing, Inc.,* 151 Mich.App. 424, 390 N.W.2d 732, 734 (1986). However, the parties have not identified any relevant difference between federal and state law. Therefore, for the reasons stated in Section 1 *supra,* we conclude that the district court properly granted summary judgment in favor of the defendants.

### 3. Denial of Rushton's Motion for Leave to Amend

Though the parties have not raised the issue, the court does not have jurisdiction over the district court's denial of Rushton's motion for leave to amend. Rule 3 of the Federal Rules of Appellate Procedure requires the appellant to designate the judgment or order from which an appeal is taken in his notice of appeal. Fed. R.App. P. 3(c)(1)(B). This rule is jurisdictional and may not be waived by the court. *United States v. Universal Mgmt. Servs., Inc.,* 191 F.3d 750, 756 (6th Cir.1999). "[A]lthough a court may construe the Rules liberally in determining whether they have been complied with, it may not waive the jurisdictional requirements of Rules 3 and 4, even for 'good cause shown' under Rule 2, if it finds that they have not been met." *Id.* (quoting *Torres v. Oakland Scavenger Co.,* 487 U.S. 312, 317, 108 S.Ct. 2405, 101 L.Ed.2d 285 (1988)).

Rushton's notice of appeal provides that Rushton "appeals to the United States Court of Appeals for the Sixth Circuit, from an Order granting Defendant's Motion for Summary Judgement, entered in this action on the 1st day of April, 2002." J.A. at 14. This notice clearly establishes jurisdiction over the district court's summary judgment ruling. However, the district court denied Rushton's motion for leave to amend in a *separate* order, albeit an order that was entered on the same day as the order granting summary judgment. J.A. at 3, 13, 435. Hence, we lack jurisdiction over the district court's denial of the motion for leave to amend. *See Universal Mgmt.,* 191 F.3d at 756 (stating the general rule that if an appellant chooses to designate specific determinations in his notice of appeal, rather than simply appealing from the entire judgment, only the specified issues may be raised on appeal).

### CONCLUSION

For the foregoing reasons, we **AFFIRM** the judgment of the district court.

this isolated incident is not sufficient to establish that an objectively intolerable work environment existed–especially given that Rushton was unable to identify "any other incident where people ridiculed or demeaned [him] relative to being an extra in any way, verbally or through cartoons or postings or any other way." J.A. at 348.