NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a0161n.06

No. 10-3980

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED

**Feb 08, 2012**

LEONARD GREEN, Clerk

| | |
|---|---|
| MARYGENE BALDWIN, | ) |
| | ) |
| Plaintiff-Appellant, | ) |
| | ) |
| v. | ) |
| | ) ON APPEAL FROM THE |
| WRIGHT PATTERSON AIR FORCE BASE, | ) UNITED STATES DISTRICT |
| et al. | ) COURT FOR THE SOUTHERN |
| | ) DISTRICT OF OHIO |
| Defendants, | ) |
| | ) |
| and | ) |
| | ) |
| MICHAEL WYNNE, Secretary, Department of | ) |
| the Air Force, Department of Defense United | ) |
| States of America, | ) |
| | ) |
| Defendant-Appellee. | ) |

BEFORE: SUHRHEINRICH, SUTTON and COOK, Circuit Judges.

   **SUHRHEINRICH, Circuit Judge.** African American MaryGene Baldwin sued for gender, age, and race discrimination after Defendant Wright Patterson Air Force Base (WPAFB) (1) declined to promote her; and (2) assigned her to be a standby door guard at a time she was already scheduled to attend a class that was a precondition of future promotion. Finding that she failed to present evidence that WPAFB's proffered business justification for her non-promotion was pretextual, and that she failed to demonstrate that the scheduling of her door guard duty amounted to an adverse

1

employment action, the district court granted WPAFB's motion for summary judgment. We **AFFIRM**.

## I. Background

WPAFB hired Baldwin as a GS-9/12 civil service employee in 1981.[1] In 1983, Baldwin began serving WPAFB as a volunteer Equal Employment Opportunity (EEO) Counselor, a collateral duty she held until the use of all volunteer counselors was discontinued in 2008. By 1985, Baldwin had been promoted to GS-12. Baldwin was still serving as a GS-12 when Ms. Michelle Corcoran became her supervisor in the Spring of 2005.

### A. August 2005 Non-Promotion

Shortly after Corcoran's transfer into Baldwin's division, Corcoran announced she was filling an open GS-13 position. Although Baldwin had been unsuccessful in seeking promotion to GS-13 roles in the past, Corcoran encouraged her to apply. There were twenty-seven qualified applicants for the position. Twelve, including Baldwin, were GS-12s eligible for promotion. Fifteen were existing GS-13s seeking a position transfer.

Using a pre-printed score sheet, Corcoran ascribed each candidate points for their education and experiences relative to the principal functions of the GS-13 position. Baldwin earned a base score of fifty-seven points, which Corcoran reduced by three points for Baldwin's consistently declining performance reviews. Faith Heckler, the chosen candidate, earned a base score of sixty-seven points. Corcoran increased Heckler's base score by thirteen points for her experience as a temporary GS-13 (three points) and her partial-completion of Air Command and Staff College (ten

---

[1] The term "GS" refers to the General Schedule, the typical pay scale used for U.S. civilian employees.

points). Thus, Heckler's score exceeded Baldwin's at the base and adjusted levels. Heckler is younger than Baldwin and is Caucasian.

Ms. Heckler's selection was announced on August 1, 2005. Baldwin admits she did not initially believe the decision was discriminatory. Her perception changed, however, after Stephanie Lee from the WPAFB Employee Relations Office allegedly explained *why* Baldwin had not been chosen. Baldwin says Lee told her that Corcoran did not promote Baldwin because she neither had a master's degree nor professional military education. Baldwin, in fact, has a master's degree in elementary education and completed Air Command and Staff College. The inconsistencies between her qualifications and Corcoran's alleged reason for her non-promotion caused Baldwin to believe that Corcoran disregarded her credentials when she completed the candidates' score sheets, and that the decision not to promote her was discriminatory.

Following her conversation with Lee, Baldwin attempted to file a complaint with the EEO office. Baldwin's Initial Counseling Information Form, dated October 3, 2005, certifies that she first contacted an EEO Counselor concerning her non-promotion on September 21, 2005.[2] As Baldwin waited more than 45 days after learning of her non-promotion to contact the EEO Office, no investigation was conducted and Baldwin's claim was dismissed as untimely under 29 C.F.R. § 1614.107(a)(2).

**B. Door Guard Assignment**

In late September, after Baldwin's non-promotion and the EEO office's dismissal of her discrimination complaint, Baldwin's division became required to submit a list of employees who

---

[2] Baldwin now disputes that she waited until September 21, 2005 to contact an EEO Counselor, claiming that she spoke with a Counselor over the phone on September 15, 2005 but was told the two could not meet until six days later.

would stand guard at their building's doorways in case of a heightened security alert or exercise. Corcoran scheduled Baldwin as a standby guard weekday mornings from 6:00 a.m. to 8:00 a.m. Baldwin raised her displeasure with the potential conflict between this duty and an English course Corcoran had "insisted" Baldwin take as a condition of future promotion. The class was taught two days a week from 8:00 a.m. to 10:00 a.m. According to Baldwin, Corcoran responded that the conflict was "not her concern" and subsequently threatened Baldwin with charges of insubordination, up to and including termination, for raising the issue.

Baldwin promptly filed an EEO complaint, alleging that Corcoran's scheduling of her door guard duties and subsequent threat of insubordination was discriminatory. Nonetheless, Baldwin admitted in an affidavit to the EEO Investigator that she filed the complaint with the sole purpose of making the EEO Office investigate her time-barred failure-to-promote claim. She also conceded that the door guard duty was merely an obligation to be on standby, and that it had not actually conflicted with her class schedule. Not surprisingly, the EEO Office dismissed Baldwin's complaint.

Following the dismissal of her EEO complaint, Baldwin brought suit against WPAFB in the Federal District Court for the Southern District of Ohio. The Magistrate issued a Report and Recommendation (R&R) finding that, among the eight claims raised in her complaint, only Baldwin's aforementioned claims of gender, age, and race discrimination regarding her non-promotion and the scheduling of her door guard duties were properly presented for adjudication. The district court adopted the Magistrate's R&R and full discovery was conducted on Baldwin's discrimination claims. At the close of discovery, WPAFB moved for summary judgment. Finding that Baldwin's non-selection claim had not been administratively exhausted and, in any event, both

4

claims failed on the merits, the district court granted WPAFB's motion and entered judgment in its favor on July 7, 2010. Baldwin appeals the district court's order.

## II. Analysis

We review *de novo* a district court's entry of summary judgement. *Gallagher v. Croghan Colonial Bank*, 89 F.3d 275, 276-77 (6th Cir. 1996) (citing *Harrow Prods., Inc. v. Liberty Mut. Ins. Co.*, 64 F.3d 1015, 1019 (6th Cir. 1995)). Summary judgment is proper if there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

Before us is Baldwin's allegation that WPAFB discriminated against her based on her age and race, in violation of Ohio and federal law.[3] For some types of claims, the Age Discrimination in Employment Act (ADEA) and Title VII require "materially different" analyses. *Gross v. FBL Financial Services, Inc.*, 557 U.S. 167, 129 S. Ct. 2343, 2348 (2009). However, where a plaintiff presents only circumstantial evidence of discrimination, our analysis under the two statutes largely overlaps. *See Geiger v. Tower Automotive*, 579 F3d 614, 622 (6th cir. 2009). Moreover, the elements of discrimination are the same under Ohio law and Title VII. *Graham v. Best Buy Stores, L.P.*, 298 F. App'x 487, 493 n.5 (6th Cir. 2008) (internal citations omitted). Thus, one standard applies to all of Baldwin's claims.

Baldwin admits she lacks direct evidence of WPAFB's alleged discrimination. Accordingly, we apply the familiar *McDonnell-Douglas* burden shifting framework. *See McDonnell-Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under this framework, Baldwin must first present a *prima*

---

[3] Baldwin has presented no evidence of gender discrimination and does not allude to it in her brief. Accordingly, we, like the district court, understand her to have forfeited this aspect of her claim.

*facie* case for discrimination by showing that: (1) she belongs to a protected class; (2) she was qualified for the job at issue; (3) she suffered an adverse employment action; and (4) she was treated differently than similarly situated non-protected person(s). *See, e.g., id.* at 802 (Title VII); *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 350 (6th Cir. 1998) (ADEA); *Policastro v. Northwest Airlines, Inc.*, 297 F.3d 535, 538 (6th Cir. 2002) (citing *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992) (Title VII)). Once Baldwin makes her *prima facie* case, the burden of production shifts to WPAFB to proffer a legitimate, nondiscriminatory reason for the adverse employment action. *Id.* Thereafter, the burden returns to Baldwin to show that WPAFB's explanation is pretextual by showing: "(1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate [its] action, or (3) that they were insufficient to motivate [its] action." *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 (6th Cir. 2009). "The key question is always whether, under the particular facts and context of the case at hand, the plaintiff has presented sufficient evidence that he or she suffered an adverse employment action under circumstances which give rise to an inference of unlawful discrimination." *Macy v. Hopkins County Sch. Bd. of Educ.*, 484 F.3d 357, 365 (6th Cir. 2007) (citing *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)).

### A. August 2005 Non-Promotion

Baldwin contends that the district court erred in finding that her August, 2005 non-selection claim was not timely filed with the EEO Office and, therefore, was not administratively exhausted. She also claims the court erred in concluding that she failed to demonstrate pretext. Because we agree that Baldwin's non-selection claim fails on the merits, we need not address the exhaustion issue.

6

WPAFB concedes that Baldwin has established a *prima facie* case for race and age discrimination in her non-selection for the August, 2005 promotion. In turn, WPAFB proffers a legitimate business purpose for the adverse employment action, i.e., that Heckler's score sheet demonstrated that she was more qualified than Baldwin.

Baldwin claims that WPAFB's purported reliance on the candidates' score sheets is pretextual because (1) Corcoran incorrectly calculated her base score and (2) then compounded this intentional error by discriminatorily removing points from Baldwin's score and adding points to Heckler's score. In essence, Baldwin claims that the supposedly objective score sheet was used as a tool to facilitate discrimination. We disagree.

### 1. Base Score Calculation

To begin, Baldwin's base score was not incorrectly calculated. She raises three reasons why it was, and we address these in turn.[4]

First, Baldwin claims she was entitled to five additional points for a Management Leadership Training Course. During her deposition, she identified the course as "EEO training 2000." Hardly a unique qualification, "EEO training 2000" is a class required of *all* pre-2000 Air Force employees and one for which neither she nor Heckler received credit. Had Baldwin received credit for this course, Heckler would have as well; accordingly, Corcoran's failure to award Baldwin the challenged five points had no detrimental affect on her candidacy.

---

[4] Though she claimed the precipitant of her EEO filing was Corcoran's failure to credit her master's degree and professional military education, she clearly received the prescribed twenty points for her master's degree in elementary education, plus an additional ten points for her training at Air Command and Staff College. Baldwin does not challenge this point allocation on appeal.

Baldwin next alleges she was denied five points for a Finance and Budget course she completed. She does not dispute that the score sheets limited credit for this and similar courses to those taken within the last ten years. Nevertheless, she has identified only classes taken in the 1980s. Clearly, her purported qualification falls outside of the category parameters and Corcoran did not wrongly deny her credit for it.

Baldwin argues that discrimination can be subtle, and intimated that we might infer it from the fact that the relevant ten-year limitation was added in Corcoran's handwriting, rather than pre-printed on the score sheets themselves. While such an annotation may be troubling in a different context, it had no discriminatory effect in this case. First, it was written on both candidates' score sheets. Second, Baldwin has not alleged that the restrictions had a disparate impact on her and Heckler's candidacy, such as by showing that unlike Baldwin, Heckler had not taken any of the listed classes within the last ten years. Third, Baldwin's argument is a double-edged sword. Baldwin earned five points for her relevant experience as a GS-12 in a category limited, but for Corcoran's handwritten addition of "or GS-12," to candidates (such as Heckler) who had previously served as a GS-13.

Finally, Baldwin claims she was entitled to one point for each of two performance awards she earned in 1986 and 1989. Like her Finance and Budget course, however, Baldwin's awards are simply too dated to have warranted credit on her GS-13 job application. Baldwin does not contest that the printed portion of the score sheet expressly limits credit to awards earned within the five years prior to application, yet claims she is entitled to points for awards earned more than three times that long ago. These two notions oppose each other, and Corcoran was again correct to withhold the relevant points from Baldwin's score.

## 2. Discretionary Score Adjustments

On her second argument of pretext, Baldwin contends that Corcoran arbitrarily and discriminatorily added and removed points from Baldwin's and Heckler's base scores, further increasing the gap between the two candidates. Baldwin is correct that Corcoran reduced her score by three points for declining performance appraisals and raised Heckler's score by thirteen points, three for her experience serving as a temporary GS-13 and ten for being in the process of completing Air Command and Staff College. Nevertheless, these adjustments do not show discrimination.

Although Baldwin appropriately observes that a purely discretionary determination made apart from and irrespective of objective criteria might not be reasonably construed as a "legitimate business purpose" for an employer's adverse employment action, that principle does not apply here. First, the additional criteria used by Corcoran to adjust the candidates' base scores, while not pre-printed on the score sheet itself, reflected legitimate considerations in Corcoran's decision, e.g., weighing candidates' past performance and considering relevant experience serving as a GS-13. More importantly, the adjustments were irrelevant to the outcome of the competition. Heckler's score was higher than Baldwin's at the base *and* adjusted levels. Accordingly, even if Corcoran's modifications were inappropriate, they had no bearing on Baldwin's non-promotion.

## B. Door Guard Assignment

Baldwin's second claim is that Corcoran discriminated against her by forcing her to take an English course as a condition of promotion but maliciously assigning her to door guard duty at the same time so that she could not complete both requirements, potentially subjecting her to a poor evaluation and insubordination discipline up to and including termination. Again, we disagree.

9

As a preliminary matter, Baldwin admits she alleged her door guard schedule was discriminatory only to circumvent the forty-five-day limitation on her failure-to-promote claim. In any event, Baldwin fails to show how Corcoran's scheduling of her job duties was an adverse employment action. *See Kocsis v. Multi-Care Management., Inc.*, 97 F.3d 876, 885 (6th Cir. 1996). She concedes that her door guard schedule was for standby purposes only, and that this contingent duty never actually conflicted with her class attendance. We concur with the district court that Baldwin "has simply presented unsupported allegations rooted in speculation" and that these allegations cannot withstand summary judgment.

### III. Conclusion

For the reasons stated, we **AFFIRM** the judgment of the district court.