*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 14a0012p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

ROBERT DELEON and MAE DELEON,
                    *Plaintiffs-Appellants*,

     *v.*

No. 12-2377

KALAMAZOO COUNTY ROAD COMMISSION;
TRAVIS BARTHOLOMEW and JOANNA
JOHNSON, in their official and individual
capacities,

                    *Defendants-Appellees*.

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 1:11-cv-00539—Paul Lewis Maloney, Chief District Judge.

Argued: October 8, 2013

Decided and Filed:  January 14, 2014

Before:  KEITH and SUTTON, Circuit Judges; BLACK, District Judge[*]

_____

## COUNSEL

**ARGUED:** Lennox Emanuel, THE NATIONAL LAW GROUP, P.C., Detroit, Michigan, for Appellants.  Thomas H. Derderian, MICHAEL R. KLUCK & ASSOC., Okemos, Michigan, for Appellees.  **ON BRIEF:** Lennox Emanuel, THE NATIONAL LAW GROUP, P.C., Detroit, Michigan, for Appellants.  Thomas H. Derderian, MICHAEL R. KLUCK & ASSOC., Okemos, Michigan, for Appellees.

    KEITH, J., delivered the opinion of the court, in which BLACK, D.J., joined. SUTTON, J. (pp. 11–14), delivered a separate dissenting opinion.

_____

[*]The Honorable Timothy S. Black, United States District Judge for the Southern District of Ohio, sitting by designation.

---

**OPINION**

---

DAMON J. KEITH, Circuit Judge.   Robert Deleon ("Deleon") appeals the dismissal of certain of his claims from the district court's grant of summary judgment in Defendants' favor.  The district court granted Defendants' motion on the basis that Deleon did not suffer an "adverse employment action."  Deleon was laterally transferred from one department to another, which he alleges constituted an action giving rise to sustainable claims of discrimination.  On appeal, the principal issues before this Court are: (1) whether the conditions were sufficiently intolerable to maintain actionable discrimination claims; and (2) whether the fact that Deleon applied for and interviewed for the position to which he was eventually transferred disqualifies him from showing that the employment action was truly "adverse."  For the reasons that follow, we answer in Deleon's favor on both issues.  Accordingly, we **REVERSE** the grant of summary judgment and **REMAND** for proceedings consistent with this opinion.

## I. BACKGROUND

Deleon, a fifty-three year old  Hispanic male of Mexican descent, was employed by the Kalamazoo County Road Commission ("the Commission") for twenty eight years. Beginning in 1995, Deleon served as an "Area Superintendent" for the Commission.  In that capacity, Deleon supervised road maintenance activities, road crews, and oversaw repairs.  Deleon generally received positive reviews throughout his time in this position. Deleon alleges a pervasive atmosphere of racial insensitivity and derogatory comments throughout the course of his employment.

While serving as Area Superintendent, Deleon was supervised by Defendants Travis Bartholomew ("Bartholomew") and Joanna Johnson ("Johnson").  In 2008, a vacancy arose for the position of "Equipment and Facilities Superintendent."  The job description described the working conditions as "primarily in office [ ] and in garage where there is exposure to loud noises and diesel fumes."  R. 55-4, Ex. 5.  Deleon

applied for this position on November 13, 2008. Had he been offered the position, Deleon attested that he would have demanded a $10,000 salary increase. He also viewed the position as possessing better potential for career advancement.

After an interview, Deleon was informed that he did not receive the position. He admits that his computer skills, which were a substantive qualification for the position, were insufficient. Consequently, the commission hired another candidate who left the position shortly thereafter. The Commission then offered the position to an external candidate; this candidate eventually declined. In 2009, Deleon was involuntarily transferred to the position.[1]

According to the Commission, this was part of a larger "reorganization." R. 55-3, Ex. 4. Bartholomew admitted that he and Johnson decided to transfer Deleon. Deleon voiced numerous objections to the hazards posed by the new position. Deleon testified that, in applying for the position, he demanded a raise because of the "hazard posed by diesel fumes and poor ventilation in the equipment and facilities area." Deleon did not receive his requested raise. Another employee corroborated the description of the conditions: "It's a stinky environment. It's like sticking your head in an exhaust pipe. Have you ever sat in traffic behind a city bus? That's what it was like in the maintenance facility . . . diesel fumes all the time." R. 64, Ex. 8, p. 31. Deleon stated that it was "an office and enclosed garage facility with running trucks and equipment that resulted in constant exposure to diesel fumes." R. 64, Ex.1, pp. 230-231. According to this employee, this was the only Area Superintendent position subject to these conditions. Deleon asserts that he developed bronchitis— as well as a cough and sinus headaches due to the diesel fumes—and would blow black soot from his nostrils as a result.

---

[1] Although Deleon originally applied for the position, his application was denied. Nine months later, Deleon was involuntarily transferred to the position. R. 64 at 110-11 (Deposition of [employer] Bartholomew: "Q. This wasn't something that he had a choice in terms of moving from area superintendent to equipment and facilities superintendent. Correct? A. Correct. Q. He had to do whatever he was told to do in terms of the transfer. Correct? A. Correct."). The dissent notwithstanding, the facts here do not present a "voluntary application," but rather an involuntary transfer.

Thereafter, Deleon's first evaluation indicated that his performance was "acceptable in most critical areas but [was] not sufficiently above minimum satisfactory level in all areas." R. 55-5, Ex. 8. Bartholomew thanked Deleon for his hard work, but identified technology as an area in which he could improve. Deleon, who was unhappy in his new position, inquired as to why he "had been involuntarily moved from a position where he was performing well to one that was more hazardous." R.64 Ex.1, p. 61. Bartholomew stated that Deleon had no choice but to accept the transfer. R. 64-1 at 110-11. Deleon asserts that the transfer was a deliberate attempt to set him up to fail.

Bartholomew asked Deleon to write a memorandum about the redesign of a truck. However, Deleon disagreed in principle with the strategy, and was summoned into Bartholomew's office. Deleon testified as to having a fractious meeting with Bartholomew. Four days after the meeting, Deleon was hospitalized for five days. He attributes the hospitalization to a work-induced, stress-related mental breakdown, for which he took eight months' leave under the FMLA. In August 2011, Deleon's psychiatrist cleared him to return to work, but, at that point, the Commission had terminated him. According to the Commission, Deleon had exhausted all of his available leave.

## II. STANDARD OF REVIEW

We review a district court's grant of summary judgment *de novo*. *City Management Corp. v. United States Chem. Co.,* 43 F.3d 244 (6th Cir. 1994). Summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories and admissions, together with the affidavits, show there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law. FED. R. CIV. P. 56(A); *Tucker v. Tennessee*, 539 F.3d 526, 531 (6th Cir. 2008). The burden is on the moving party to show that no genuine issue of material fact exists. FED. R. CIV. P. 56(C)(1); *Bennett v. City of Eastpointe*, 410 F.3d 810, 817 (6th Cir. 2005). The facts, and the inferences drawn from them, must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The question is "whether the evidence presents a sufficient disagreement to require

submission to the jury or whether it is so one-sided that one party must prevail as a matter of law. *Id*. at 251-52.

## III. ANALYSIS

### A. *Qualitative Intolerability*

Deleon brings claims of: (1) a violation of the Equal Protection Clause of the Fourteenth Amendment, predicated under 42 U.S.C. §1983; (2) race discrimination in violation of the Civil Rights Act of 1964, 42 U.S.C. §2000e *et seq*.; (3) national origin discrimination in violation of the same; and (4) age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"). The elements for establishing an Equal Protection claim under § 1983 and the elements for establishing a violation of Title VII disparate treatment claim are the same. *Lautermilch v. Findlay City Schs.*, 314 F. 3d 271, 275 (6th Cir. 2003); *Gutzwiller v. Fenik*, 860 F.2d 1317, 1325 (6th Cir. 1988). Similarly, "[t]o state a claim under the Equal Protection Clause, a § 1983 plaintiff must allege that a state actor intentionally discriminated against the plaintiff because of membership in a protected class." *Henry v. Metro. Sewer Dist.*, 922 F.2d 332, 241 (6th Cir. 1990) (internal quotations omitted). Title VII prohibits employers from discriminating against individuals on the basis of both race and national origin. 42 U.S.C. §2000e-2(a)(1); *Davis v. Cintas Corp.*, 717 F.3d 476 495 (6th Cir. 2013). To establish a *prima facie* case of intentional discrimination, a plaintiff must show that (1) he was a member of a protected class, (2) he suffered an adverse employment action, (3) he was otherwise qualified for the position, and (4) he was replaced by someone outside the protected class or treated differently than a similarly situated, non-protected employee. *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 707 (6th Cir. 2006) (citation omitted).

The ADEA generally prohibits employers from discriminating by failing or refusing to hire, discharging, or discriminating against an individual "with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." *Provenzano v. LCI Holdings, Inc.*, 663 F.3d 806, 811 (6th Cir. 2011) (quoting 29 U.S.C. § 623 (a)(1)). Generally, discrimination claims brought under Title

VII and the ADEA are analyzed under the same framework. *See Policastro v. Northwest Airlines, Inc.*, 297 F.3d 535, 538 (6th Cir. 2002). To establish a *prima facie* case for age discrimination under the ADEA, a plaintiff must show that (1) he was a member of the projected class, *i.e.*, 40 years old or older, (2) he suffered an adverse employment action, (3) he was otherwise qualified for the position, and (4) he was replaced by a substantially younger employee, or additional evidence shows that the employer was motivated by age. *Bush v. Dictaphone Corp.*, 161 F.3d 363, 368 (6th Cir. 1998).

Importantly, all three causes of action require that the aggrieved plaintiff show that he suffered an adverse employment action. An adverse employment action has been defined as a "materially adverse change in the terms and conditions of a plaintiff's employment." *White v. Burlington N. & Santa Fe Ry. Co.*, 364 F.3d 789, 795 (6th Cir. 2004) (*en banc*) (citation omitted). A "mere inconvenience or an alteration of job responsibilities" is not enough to constitute an adverse employment action. *Id.* at 797 (citing *Kocsis v. Multi-Care Mgmt. Inc.*, 97 F.3d 876, 885-87). The Commission, and indeed the district court, relied on the proposition that "[r]eassignments without changes in salary, benefits, title, or work hours usually do not constitute adverse employment actions." *Kocsis*, 97 F.3d at 885. Nevertheless, a reassignment without salary or work hour changes, however, may be an adverse employment action if it constitutes a demotion evidenced by a "less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation." *White v. Burlington N. & Santa Fe Ry. Co.*, 364 F.3d 789, 795 (6th Cir. 2004), *aff'd sub nom. Burlington N. & Santa Fe Ry. Co.*, 548 U.S. 53 (2006) (emphasis added).

The Supreme Court addressed the issue at length in *Burlington Northern*. 548 U.S. 53 (2006). As in the instant case, the matter involved a transfer from one employment unit to another without a change in "salary benefits, title, or work hours." *Burlington N.*, 364 F.3d at 797. The Court held that "[w]hether a particular reassignment is materially adverse depends upon the circumstances of the particular case," and "should be judged from the perspective of a reasonable person in the plaintiff's position,

considering 'all the circumstances.'" *Burlington N.*, 548 U.S. at 71. We have held that a transfer may classify as an adverse employment action where it constitutes a "constructive discharge." *Policastro v. Nw. Airlines, Inc.*, 297 F. 3d 535, 539 (6th Cir. 2002). In order for an employee to be constructively discharged, the working conditions "must be objectively intolerable to a reasonable person." *Id.* (quoting *Kocsis*, 97 F.3d at 886) (emphasis added).

Even still, our Circuit has not foreclosed the possibility that a transfer not rising to the level of a constructive discharge might nonetheless constitute a tangible employment action. *See*, *e.g.*, *Keeton v. Flying J, Inc.*, 429, F.3d 259, 265 (6th Cir. 2005); *Hollins v. Atl. Co.*, 188 F.3d 652, 662 (6th Cir. 1999). In those cases, the focus narrows to whether there are "other indices that might be unique to the particular situation" which could turn what would ordinarily not be an adverse employment action into one. *Id.* At a minimum, the employee must be able to show a quantitative or qualitative change in the terms of the conditions of employment. *See Patt v. Family Health Sys., Inc.*, 280 F.3d 749, 753 (7th Cir. 2002).

The case law thus indicates that an employee's transfer may constitute a materially adverse employment action, even in the absence of a demotion or pay decrease, so long as the particular circumstances present give rise to some level of objective intolerability. Again, *Burlington Northern* is instructive. There, the Supreme Court granted a writ of *certiorari* after we issued an *en banc* opinion. The plaintiff-respondent was the only woman working at the Burlington Northern & Santa Fe Railway Company. *Burlington N.*, 548 U.S. at 58. Though she was initially staffed as a "track laborer," she was later transferred to operate a forklift. *Id.* She was subsequently removed from forklift duty and was reassigned to perform track laborer tasks. *Id.* A supervisor opined that, "in fairness, a more senior man should have the less arduous and cleaner job of forklift operator." *Id.* (quotations omitted). The plaintiff filed a complaint with the EEOC, and later federal court, contending that the reassignment of her duties amounted to unlawful gender-based discrimination. *Id.* In determining whether the plaintiff had suffered a materially adverse employment action, the Supreme Court relied

on the "considerable evidence" that the new position was "more arduous and dirtier," *id.* at 71, despite the lack of a diminution in salary, benefits, or title. On this basis, the Supreme Court held that a "jury could reasonably conclude that the reassignment would have been materially adverse to a reasonable employee." *Id.* In the same vein, this Court has also held that, where an employee is transferred to "some wretched backwater," a showing of adverse action is supplied on the basis of intolerability. *Mattei v. Mattei*, 126 F.3d 794, 808 (6th Cir. 1997).

Accordingly, insofar as we assess the level of intolerability, we conclude that Deleon has met his threshold at the summary judgment stage. Reminded that we must view the evidence in the light most favorable to the plaintiff, we conclude that Deleon has alleged an actionable claim. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Deleon provided evidence that he was exposed to toxic and hazardous diesel fumes on a daily basis. R. 64, Ex.1, pp. 230-233. He testified further that he had to wipe soot out of his office on a weekly basis. *Id.* at 231. As a result, Deleon claims that he contracted bronchitis, had frequent sinus headaches, and would occasionally blow black soot out of his nostrils. *Id.* at 231. The work conditions were corroborated by another employee, Timothy Landrum, who compared the air quality in the position to "sticking your head in an exhaust pipe," and sitting "behind a city bus." R. 64, Ex. 8, p. 31. Deleon avers that his previous position never exposed him to the level of hazard presented by the new position. R. 64, Ex. 1, p. 230. The testimony presents sufficient indication that the work environment was objectively intolerable. *Kocsis*, 97 F.3d at 886. Accordingly, we conclude that "the evidence presents a sufficient disagreement," *Anderson*, 477 U.S. at 251-52, as to whether the transfer was materially adverse to a reasonable person, especially in light of the factual similarities between the instant case and *Burlington Northern*. Here too there is evidence for the jury to consider that the new position was "more arduous and dirtier." *Burlington N.*, 548 U.S. at 71.

*B. Application for the Position*

We must also address the issue that Deleon applied for the position before being "involuntarily" transferred. Semantically, the argument follows that an action cannot be

truly "adverse" if coveted by its actor. No case within this circuit has ruled on this precise issue. Nevertheless, our sister circuits have held that the request of a transfer, and accession to the new position, does not categorically bar a finding of an adverse employment action. *See, e.g.*, *Richardson v. New York State Dep't of Correctional Services*, 180 F.3d 426, 444 n.4 (2d Cir. 1999) (finding sufficient evidence to support a conclusion that a transfer requested by plaintiff constituted an adverse employment action where there was evidence that another, more desirable, lateral job opening for which plaintiff was qualified may have existed but was not offered to the plaintiff); *Sharp v. City of Houston*, 164 F.3d 923, 934 (5th Cir. 1999) (reversing grant of summary judgment where "[t]he jury could have found that the transfer, albeit at Sharp's request, was a constructive demotion, the involuntary result of conditions so intolerable that a reasonable person would feel compelled to leave"); *see also Huck v. Belknap*, 2:06-CV-1088, 2008 WL 2247069 at *6 (S.D. Ohio May 29, 2008) ("The fact that Huck once applied for the job to which she was transferred does not as a matter of law mean that she wanted it at the time of her involuntary transfer and that it cannot be a materially adverse action"); *cf. Simpson v. Borg-Warner Auto., Inc.*, 196 F.3d 873, 876-78 (7th Cir. 1999) (holding that voluntary transfer was not an adverse employment action where the work environment was not intolerable and assessing voluntariness under "constructive discharge" analysis). Accordingly, we conclude that under certain circumstances, a voluntary or requested transfer may still give rise to an adverse employment action.[2]

The record reflects that Deleon applied for the position with the intention of commanding a substantial raise and under the impression that employment benefits would inure to the benefit of his career. Such a request for "hazard pay," which was never provided, tilts the issue as to whether Deleon really requested or wanted the position in his favor. Nor are we persuaded by the fact that Deleon technically never withdrew his request, and did not complain at the time he received the transfer. Although Deleon did not testify that he specifically told a superior that he did not "like" his new job, he did testify that he approached his supervisors and asked them "why they

---

[2] *See* note 1, *supra.*

took me out of a job [where] I was doing a good job and put me in a more hazardous job." R. 64, p. 61. This supports Deleon's argument that he was "set up to fail."**3** We are leery of a holding that would require that an involuntarily transferred employee, alleging a discriminatory work environment, must demand a transfer from the very superiors engaging in the discrimination.

We emphasize that the key focus of the inquiry should not be whether the lateral transfer was requested or not requested, or whether the aggrieved plaintiff must *ex tempore* voice dissatisfaction, but whether the "conditions of the transfer" would have been "objectively intolerable to a reasonable person." *Strouss v. Michigan Dep't of Corr.*, 250 F.3d 336, 343 (6th Cir. 2001) (citation omitted). Indeed, an employee's opinion of the transfer, whether positive or negative, has no dispositive bearing on an employment actions classification as "adverse." *See Sanchez v. Denver Pub. Sch.*, 164 F.3d 527, 532 n.6 (10th Cir. 1998); *Doe v. Dekalb County Sch. Dist.*, 145 F.3d 1441, 1449–50 (11th Cir. 1998). Removing the issue of material fact on the grounds that, as a matter of law, the plaintiff's initial request to obtain the position precludes him from a finding that he suffered a materially adverse employment action would, in our judgment, be improper. On that basis, and for the other foregoing reasons, we **REVERSE** the order of the District Court, and **REMAND** for further proceedings.

---

**3** Deleon's assertion that he was "set up to fail" finds support in the case law as well. *See Ford v. Gen. Motors Corp.*, 305 F.3d 545, 554 (6th Cir. 2002); *accord DiIenno v. Goodwill Indus. of Mid-Eastern Pennsylvania*, 162 F.3d 235 (3d Cir. 1998) (court erred in granting summary judgment where an employee alleged that she was transferred to a job that her employer knew she could not perform). Considering the volume of testimony at Deleon's deposition detailing the nature and extent of the racially-charged atmosphere at the Commission, in passing, we observe that it is plausible that Deleon was "set up to fail."

———————————

**DISSENT**

———————————

SUTTON, Circuit Judge, dissenting. When an employee voluntarily applies for, and obtains, a job transfer, his employer has not subjected him to an adverse employment action.

Robert Deleon applied for a transfer to the equipment and facilities superintendent position, no strings attached. When the Road Commission posted the position, Deleon (then an area superintendent) saw an opportunity for advancement and applied. R.55-4 at 1–3, 5–6; R.64 at 19 (Tr. at 75). He applied with full knowledge of the transfer's potential downside. As to diesel fumes: The job description warned that the position involved "exposure to loud noises and diesel fumes," R.55-4 at 1–3, something he had seen firsthand and had ideas for mitigating. R.64 at 19 (Tr. at 75–76). As to the additional responsibilities: Deleon understood he would need to learn new skills on the job. R.64 at 13, 17, 30 (Tr. at 46, 62, 138, 140). Yes, his application included a request for a higher salary and an additional employee. But he kept his application active and interviewed for the position *after* his supervisors told him that the job would not come with a raise or another employee. R.55-3 at 6–8; R.64 at 30 (Tr. at 138–39). After the Commission offered the job to an external candidate, Deleon complained to his supervisors about not getting the job. R.55-1 at 8–9 (Tr. at 42, 44–49); R.64 at 36 (Tr. at 224). When the initial hire resigned for personal reasons and a second external candidate turned down the job, the Commission gave Deleon the job. R.55-3 at 11–13; R.64 at 37 (Tr. at 229). In recounting the facts, the majority offers hints to the contrary—that Deleon somehow did not seek out the job, Maj. at 2, 3 and 10—but they all turn on citations to Deleon's appellate brief, not the summary judgment record.

The Commission's decision to give Deleon what he wanted, what he persisted in seeking when at first he did not succeed, did not amount to an adverse employment action, much less a retaliatory one. Deleon voluntarily applied for the job with full

knowledge of its pros and cons, making it difficult to fathom how he could premise a claim of retaliation on the transfer alone. A retaliation claim requires the employer to do something bad to the employee—something that might "have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006). That concept cannot be bent and stretched to cover an employer's decision to grant an employee's request for a transfer. No reasonable employee in Deleon's position would have interpreted the transfer as an act designed to prevent him from exercising his rights against anti-discrimination.

In this setting, it adds nothing to the claim that the soot and diesel fumes in Deleon's new office were unpleasant or difficult to deal with. Deleon applied for the job with full knowledge of the conditions—and indeed complained when he did not initially get the job. An adverse employment action requires conduct by the employer that would hinder a reasonable employee from complaining about discrimination. How could a reasonable employee interpret the granting of a sought-after transfer as a warning not to complain about this or that conduct of the employer? The answer escapes me.

The same goes for the description of the transfer by one of Deleon's supervisors as a situation where Deleon "had to do whatever he was told." R.64-1 at 18 (Tr. at 110–11). Relying on this description—one Deleon references indirectly for the first time in his reply brief on appeal and never referenced below in his summary judgment briefs—the majority alternatively calls Deleon's transfer an "involuntary" one in a footnote. Maj. at 3 n.1. But why? The record makes clear that Deleon never complained about the transfer—he sought it out—and his supervisors never told him that he had no choice in the matter. As Deleon admits, he "didn't tell anybody" that he did not want the transfer. R.64 at 16 (Tr. at 61); R.64-1 at 18 (Tr. at 110); R.64-2 at 11 (Tr. at 89). That the Commission might have transferred Deleon even *if* he had objected to it does not change, cannot change, the outcome of a *retaliation* lawsuit. No reasonable employee could interpret a transfer as an attempt to punish him for exercising his anti-discrimination rights when he gave his employer no reason to believe that he did not want the transfer and every reason to believe that he did. To repeat: When an employee

voluntarily applies for, and obtains, a job transfer, his employer has not subjected him to an adverse employment action.

The majority worries that, by focusing on Deleon's circumstances, the court will transform an objective test into a subjective one. No need to worry. The materially adverse inquiry asks whether a "reasonable person *in the plaintiff's position*" would forgo filing a complaint of discrimination because of the employment action. *Id.* at 69–70 (emphasis added). The inquiry remains objective. The answer to the question simply must concern the facts at hand.

No case to my knowledge holds that granting a sought-after transfer by itself amounts to an adverse employment action. The majority's case citations say nothing to the contrary. They instead stand for these uncontroversial propositions. An employee may recover for a requested transfer when the employee "believed the change was necessary in order to keep her job." *Spees v. James Marine, Inc.*, 617 F.3d 380, 387 (6th Cir. 2010); *see Garrett v. Univ. of Ala. at Birmingham Bd. of Trs.*, 507 F.3d 1306, 1312 (11th Cir. 2007). That of course is not a *voluntary* request for a transfer. The same goes for an employee who applies for a transfer seeking refuge from discriminatory conditions in his current position. *Compare Sharp v. City of Houston*, 164 F.3d 923, 934 (5th Cir. 1999) (holding that a requested transfer could be an adverse employment action because the plaintiff's co-workers "caused her reasonably to fear for her safety if she stayed"), *with Simpson v. Borg-Warner Auto., Inc.*, 196 F.3d 873, 876 (7th Cir. 1999) (reaching the opposite conclusion where plaintiff voluntarily "sought her downgrade").

Whatever the correct interpretation of the employment retaliation laws may be, they surely stop at this line: imposing liability on employers *whether they grant or deny* an employee's request for a transfer. All would agree that today's case is the harder one—where the employee got what he wanted—and yet, according to the majority, he still has a cognizable claim. It follows under the majority's analysis that, when the employer denies what the employee wants, he also has a cognizable claim. *See Taylor v. Geithner*, 703 F.3d 328, 338 (6th Cir. 2013) (finding that a plaintiff's allegation that "she applied for and was rejected" from a position was "plainly an adverse employment

action"). An interpretation of the retaliation laws that subjects employers to liability coming and going—whether after granting employee requests or denying them—will do more to breed confusion about the law than to advance the goals of a fair and respectful workplace. Even after plumbing the depths of logic, experience, case law and common sense, I must return to this surface point: When an employee voluntarily applies for, and obtains, a job transfer, his employer has not subjected him to an adverse employment action.

The majority seeing it differently, I must respectfully dissent.